LUCY S. MORRISON, as Administratrix, etc., of SAMUEL H. MORRISON, Deceased, Plaintiff, *v.* THE METROPOLITAN TELEPHONE AND TELEGRAPH COMPANY, Defendant.

*Death caused by negligence — open elevator shaft.*

When the owner of a building operates an elevator therein for the benefit of persons having business in the building, he is required to exercise due care for their safety and is liable for the negligence of his employees in the operation of the elevator.

On the trial of an action brought to recover damages for the death of a person alleged to have been caused by the defendant's negligence, the evidence was to the effect that a passenger elevator in the defendant's building, in working order except as to its signal apparatus, was stopped above the ground floor while the signal apparatus was being repaired, with plenty of artificial light about the elevator; the door to the shaft on the ground floor was open and a man was stationed there to pass in tools and to guard the doorway; the deceased, a mail carrier, entered the building on his rounds to distribute mail through the building, paused a few seconds to assort the mail, and then rushed to the shaft door, crowded past the man standing in the doorway, fell down the shaft and received injuries from which he died; the man at the shaft door gave no warning and made no resistance against the passage of the deceased, and it did not appear that the latter had any means of knowing why the man was there. The plaintiff was nonsuited.

*Held,* that the case should have been submitted to the jury.

MOTION by the plaintiff for a new trial on an exception taken by the plaintiff. Lucy S. Morrison, as administratrix, etc., of Samuel H. Morrison, deceased, to the ruling of the court at the Kings County Circuit in dismissing the complaint at the close of the testimony, ordered to be heard at the General Term in the first instance by an order made and entered on the 28th day of March, 1892.

*Thomas E. Pearsall,* for the plaintiff.

*Burton N. Harrison,* for the defendant.

DYKMAN, J.:

This is an action under the statute to recover damages for the death of the plaintiff's intestate.

After the testimony was closed on both sides at the trial the complaint of the plaintiff was dismissed and the exceptions were directed to be heard at the General Term in the first instance.

The intestate of the plaintiff met his death by falling down an elevator shaft in the building of the defendant in the city of New York while the elevator was above the floor.

The elevator itself was in working order, but an instrument or apparatus called the buzzer, used like an electric bell to make signals, was undergoing repair.

An assistant of the man who was making the repairs to the buzzer, or putting it in order, stood in the doorway to pass in the necessary tools and also to guard the door, which was necessarily kept open, or partly so.

. The deceased man was a mail carrier, and as he entered the first floor of the building he paused for a few seconds to assort the letters which he was to deliver in the building, and then he rushed to the door of the elevator shaft, shoved or crowded past the man who was standing in the doorway and fell down the shaft and received the injuries which resulted in his death. The case is near the border line and by no means free from difficulty.

In the first place the appellant is entitled to the benefit of every inference which can legitimately be drawn in her favor from the facts and circumstances disclosed upon the trial, because she may assume here that the jury would have made such deduction.

Further, if the facts and circumstances be such that the inferences to be drawn from them are not certain and where different minds may reach dissimilar conclusions, and a process of reasoning is necessary to determine whether negligence is to be attributed to a party, it is for the jury to make the deduction. (*Hart* v. *Hudson River Bridge Co.*, 80 N. Y. 622.)

Equally well settled is the rule that the plaintiff in actions like this must prove that death was caused solely by the negligence of the defendant, and that the want of care on the part of the deceased in no way made any contribution to the result, and the two points must be established by competent proof, and must not be left to speculation. The plaintiff has the burden upon the whole case. (*Cordell* v. *N. Y. C. & H. R. R. R. Co.*, 75 N. Y. 332.)

" It is not enough to authorize the submission of a question as one of fact to a jury that there is some evidence. A scintilla of evidence, or a mere surmise that there may have been negligence on the part of the defendant, would not justify the judge in leaving the case to

the jury." (*Baulec* v. *N. Y. & Harlem R. R. Co.*, 59 N. Y. 356.)

Nor are judges any longer required to submit a question to the jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party. (*Dwight* v. *Ins. Co.*, 103 N. Y 359.)

These are plain rules and easily understood, but the great difficulty in a border case lies in their application.

The case of *Tousey* v. *Roberts* (114 N. Y. 312), is somewhat like this, but the facts were stronger against the defendant than they are here.

That was an elevator case. The husband of the plaintiff leased rooms in an apartment house owned by the defendant in the city of New York, and the usual mode of reaching such apartments was by an elevator operated by the defendant for the accommodation of his tenants. The door through which the elevator car was entered from the ground floor could be opened from the outside.

The plaintiff entered the hallway from the street door between six and seven o'clock on the 7th day of May, 1883. There was no artificial light in the hallway. As she approached the elevator the door was thrown open by a boy who had frequently operated the elevator, but was not employed for that purpose. The plaintiff stepped through the door and, as the car was above, she fell to the bottom of the shaft and was injured.

In that case the court said as the defendant operated the elevator for the benefit of his tenants, he was required to exercise due care for their safety and was liable to them for the negligence of his employees in its operation. So it must be said here that as the defendant operated the elevator for the benefit of persons having business in the building, it was required to exercise due care for their safety and liable for the negligence of its employees in its operation.

As yet we have but little assistance from the adjudicated cases. In the *Tousey* case there were no artificial lights and the accident happened in the evening. Here the accident was about half-past one in the afternoon and there was plenty of artificial light, so much that the workmen could work inside of the shaft.

But there, as here, the door leading to the car in the shaft was open. There the court said that it was not, as matter of law, contributory negligence on the part of the plaintiff to pass through without stopping to look or listen.

But there the door was unguarded and here it was guarded. Does that change the case, if the guard was ineffectual? The door was open or partly so, and a man stood in it to prevent persons from passing, but why he was there the deceased did not know and could not know. He saw the man and went past him, but had he any means of knowing why he was there, or whether he had any business there? The man gave no warning and made no resistance against the passage of the deceased. Might not the deceased have fairly believed either that the man had come from the car or was about to enter it, or was standing there for no purpose? He saw the door open or partly so, and the shaft well lighted as if every thing was regular, and he received no warning, saw no obstruction and met with no opposition.

If the man was placed there as a guard, it was his duty to use all proper means to prevent people from entering the doorway, and instead of performing that duty he did nothing but stand still and remain silent.

Was he not in that respect guilty of negligence which must be attributed to the defendant?

The deceased man was doubtless in haste; all are in haste at midday in that great city, and it is assumed to be no uncommon sight to see persons around the door of an elevator. It is not supposed to be a place of danger to be approached with caution, and if persons are standing at the door it would be no unnatural assumption to assume that they were either there for no purpose or were going in or coming out.

It must be borne in mind that this elevator was in full operation and the car had but just started on an upward trip.

Under all these circumstances we cannot say that the inferences to be drawn from them are certain and uncontrovertible and that different minds might not reach diverse conclusions.

We cannot say, as a matter of law, that the deceased had not the right to rely upon the appearances presented and act as he did, or that a verdict in favor of the plaintiff would be destitute of support.

It was, therefore, the peculiar province of the jury to draw the proper inferences, and not the court.

The verdict should, therefore, be set aside and a new trial granted, with costs to abide the event.

PRATT, J., concurred.

Judgment reversed and new trial granted, costs to abide event