(56 Misc. Rep. 594.)

## LEKAS et al. v. SCHWARTZ.

(Supreme Court, Appellate Term. November 29, 1907.)

1. SALES—PERFORMANCE OF CONTRACT—TENDER.

Where the conduct of a buyer of goods is equivalent to notice to the other party that he will not comply with the contract on his part, a tender by the other party is not necessary as a condition precedent to a recovery for breach of the contract.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, § 1087.]

2. SAME—BREACH—MEASURE OF DAMAGES.

Where personal property was sold, of which only part was delivered, and the buyer refused to take the remainder, the seller was entitled to hold the undelivered part for the buyer and sue for the whole purchase price, or to hold them for his own use and sue for the difference between the contract price and the market value at the time and place of delivery.

3. SAME—QUESTIONS FOR JURY.

In an action for breach of contract for the sale of goods, evidence considered, and *held* sufficient to take to the jury the question of the market value of the goods at the time and place of delivery.

4. SAME.

In an action for breach of contract of sale of goods, evidence considered, and *held* sufficient to take to the jury the question as to whether the buyer refused to accept.

5. SAME—SALE BY SAMPLE.

In an action for breach of contract of sale of goods, evidence considered, and *held* sufficient to take to the jury the question of whether the goods sold were damaged and not according to sample.

6. TRIAL—TAKING CASE FROM JURY.

Where, in any view of the evidence, a verdict might have properly been rendered for the plaintiff, or if there were questions of fact which might have been determined for plaintiff, and which, if determined in his favor, would have entitled him to recover, the case should not be taken from the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, § 320.]

Appeal from Municipal Court, Borough of Manhattan, Second District.

Action by George Lekas and another against Charles Schwartz. From a judgment for defendant, plaintiffs appeal. Reversed.

Argued before GILDERSLEEVE, P. J., and LEVENTRITT and ERLANGER, JJ.

Henry Hoelljes, for appellants.
Albert A. Hovell, for respondent.

107 N.Y.S.—10

GILDERSLEEVE, P. J. The action was tried before the court with a jury, and the complaint was dismissed. Plaintiffs appeal. On or before December 24, 1906, defendant called at plaintiffs' store and examined five or six cases of figs, which he found in good condition, and on December 24, 1906, he made the following contract in writing, viz.:

"This is to certify I have this 24th day of December, 1906, bought from Messrs. Lekas & Drivas [plaintiffs], 17 Roosevelt St., city, 100 cases of string figs at 5¾¢ per pound, to be delivered at my store, 87 Ludlow St., from to-day until the 15th of February, 1907, value of which to be paid 10 days after delivery of the goods."

Plaintiffs' testimony shows substantially this state of facts, viz.: Thirty cases were delivered to defendant, who accepted and paid for the same. Thereafter the defendant called at plaintiffs' place, and stated that he would not take any more figs because they were damaged. Plaintiffs' bookkeeper replied:

"We will change them for you. You have signed the contract, and you must take the figs."

The defendant said:

"You try to sell the figs, and, if you can, sell the balance of them."

Defendant took some figs out of a case in plaintiffs' store and said:

"I can't use any more of your figs. They are damaged."

This statement was true as to these particular figs, as the figs which defendant showed plaintiffs' bookkeeper had been damaged by being kept in a hot cellar; but whether these were some of the figs which had been sold to defendant does not appear. Defendant said he could not use any more figs like those; that they must be according to sample. The remaining 70 cases were never delivered, because defendant never gave any order for them, the bookkeeper says. The market value of figs on February 15, 1906, had fallen from 5¾ cents a pound, which was also the contract price, to 3½ cents a pound, making the difference on the 70 cases amount to $118.12, according to plaintiffs' testimony. One of the plaintiffs states that the figs were sold on sample, and that the samples shown defendant were good figs, and fair samples of the rest, but that defendant did not examine all of the 100 cases, but only 5 or 6 of them. Some time in January, 1906, plaintiff went to defendant's store and asked him:

"Shall I send you the balance of the figs?"

Defendant replied:

"I don't want them. They don't look very good. They are damaged. I don't like the quality."

He said he would not take them at the price; that he had bought them elsewhere at 4½ cents to 4¼ cents. A fig dealer named Calogeras swears he examined samples from the 100 cases sold to defendant by plaintiffs and that they were good figs. He picked out five boxes at random from the lot for examination. The defendant denies the fall in market value of figs, as claimed by plaintiffs, and swears that the figs were damaged and of poor quality. He also de-

nies that plaintiffs · ever offered to send the remaining 70 cases of figs, and claims that he never refused to accept the balance, if the figs were according to sample. Another witness was called by defendant to show that plaintiffs' evidence as to the market value of the figs on February 15, 1906, was incorrect. At the end of the whole case defendant moved to dismiss the complaint, and plaintiffs asked to have the issues submitted to the jury. The court refused to grant the plaintiffs' motion, and dismissed the complaint.

It seems to us that the plaintiff made out a prima facie case, and that the issues of fact raised by the conflict of proof should have been left to the jury to decide. The main argument in support of the dismissal of the complaint is the failure to show a tender of the goods to the defendant on or before February 15, 1906. The rule is that, in cases where by the terms of the contract the acts of the parties are to be concurrent, it is the duty of one who seeks to maintain the action for breach of contract, either by way of damages for the nonperformance or for the recovery of money paid thereon, not only to be ready and willing to perform on his part, but he must demand performance from the other party; but the qualifications to this rule are to be found in cases where the necessity of a formal tender or demand is obviated by the acts of the party sought to be charged, as by his express refusal in advance to comply with the terms of the contract in that respect, or where it appears that he has placed himself in a position in which performance is impossible. Ziehen v. Smith, 148 N. Y. 558–561, 42 N. E. 1080. Where the acts or declarations of a party are equivalent to notice to the other party that he does not intend to comply with the terms of the contract on his part and perform the contract, a tender by the first party is not necessary. Cornell v. Fox, 95 App. Div. 73, 88 N. Y. Supp. 482; Cornwell v. Haight, 21 N. Y. 462; Stokes v. Mackay, 147 N. Y. 235, 41 N. E. 496. The plaintiffs say, as we have seen, that the defendant told them in January that he would not take the figs, and plaintiffs' bookkeeper swears that defendant told him the same thing, although the bookkeeper offered to have the figs changed if defendant objected to the particular lot sold. So far as defendant denies a refusal to accept the figs, an issue of fact is raised that should have been submitted to the jury.

Whether or not the figs sold were damaged and not according to sample was also a question of fact for the jury. The fact that plaintiffs kept the 70 cases does not deprive them of their right of action; for, when the vendee of personal property under an executory contract of sale refuses to complete his purchase, the vendor may keep the articles for him and sue for the entire purchase price, or he may keep the property as his own and sue for the difference between the contract price and the market value of the goods at the time and place of delivery. Ackerman v. Rubens, 167 N. Y. 408, 60 N. E. 750, 53 L. R. A. 867, 82 Am. St. Rep. 728; Moore v. Potter, 155 N. Y. 486, 50 N. E. 271, 63 Am. St. Rep. 692. The plaintiffs adopted the latter remedy, and the difference in the estimates of plaintiffs and defendant as to the market value was another question of fact for the jury. The rule is that if in any view of the evidence a verdict might have properly been rendered for the plaintiff, or if there were questions of fact which

might have been determined for plaintiff, and which, if determined in his favor, would have entitled him to recover, the case should not be taken from the jury. Pratt v. Ins. Co., 130 N. Y. 212, 29 N. E. 117; Greene v. Miller, 74 Hun, 271, 26 N. Y. Supp. 425.

The judgment must be reversed, and a new trial granted, with costs to appellants to abide the event.

LEVENTRITT and ERLANGER, JJ., concur in the result.